UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **EDWARD C. ABELL, ET AL** | **CIVIL DOCKET NO. 6:23-CV-00114** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **U.S. ARMY CORPS OF ENGINEERS** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

## MEMORANDUM RULING

Before the Court is a MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER TO THE DISTRICT OF ALASKA (the "Motion") [Doc. 11] filed by Defendant, the U.S. Army Corps of Engineers ("Defendant"). An Opposition [Doc. 15] was filed by Plaintiffs, Edward C. Abell, Elaine Abell, and IPOP, LLC, ("Plaintiffs"), to which Defendant filed a Reply. [Doc. 18]. For the following reasons, Defendant's Motion is GRANTED, and this matter is dismissed for lack of subject matter jurisdiction.

### BACKGROUND

**I.    Statutory Background**

The Clean Water Act ("CWA"), among other things, prohibits the discharge of dredged or fill materials into navigable waters of the United States unless such discharge is compliant with Section 404 of the CWA. *See* 33 U.S.C. §§ 1311, 1344. Exceptions to the CWA's general prohibition are managed through the issuance of permits. § 1334(a). Congress delegated the authority to approve or deny dredging permits to the U.S. Army Corps of Engineers (the "Corps"). *Id.* Permit applications are generally reviewed by the Corps district in which the proposed dredging would

occur. § 1344(a); 33 C.F.R. § 323.3(a). After notice and opportunity for public comment, the Corps may issue a permit if it "determines that the activities … are similar in nature, will cause only minimal adverse environmental effects when performed separately, and will have only minimal cumulative adverse effect on the environment." § 1344(e)(1); § 323.6. If the proposed discharge complies with these guidelines, the Corps "will grant the permit unless issuance would be contrary to the public interest." § 323.6(a).

If the permit is denied, the applicant may appeal through the Corps' administrative appeal process, which is governed by 33 C.F.R. § 331. To administratively appeal a permit denial, the applicant must submit a Request for Appeal ("RFA") to the Corps' Division Engineer overseeing the district in which the permit was denied. The RFA must be submitted within 60 days of the initial permit denial. § 331.6(a). The Division Engineer must then appoint an impartial Review Officer ("RO") who neither "perform[ed], [n]or [was] involved with, the preparation, review, or decision making of the action being appealed." § 331.1(a); (b)(1). Within 30 days of receiving the RFA, the RO must determine whether the RFA meets the criteria for appeal set out in § 331.5(a) and notify the applicant in writing if the RFA is accepted or denied. § 331.5; § 331.7(b).

When an RFA is accepted, the RO "should determine" whether a "site investigation is needed to clarify the administrative record" within 30 days, and "should normally conduct any such site investigation within 60 days of receipt of an acceptable RFA." § 331.7(c). However, the RO may "extend the time period for review

… [i]f extenuating circumstances occur at the site" such as "seasonal hydrologic conditions, winter weather, or disturbed site conditions." *Id.* In the event of such extenuating circumstances, the "site visit must be conducted as soon as practicable … and the RO must notify the appellant of the delay in writing." *Id.*

Along with the potential site investigation, "[a]n appeal conference will be held for every appeal of a permit denial or a declined permit, unless the RO and the applicant mutually agree to forego a conference." § 331.7(e). The appeal conference "will take place within 60 days of receipt of an [ ] RFA, unless the RO determines that unforeseen or unusual circumstances require scheduling the conference for a later date." *Id.* Since the "purpose of the appeal conference is to provide a forum that allows the participants to discuss freely all relevant issues and material facts associated with the appeal," the regulation recommends that "[f]or permit denials and declined permit appeals, any site investigation should be scheduled in conjunction with the appeal review conference, where practicable." §§ 331.7(e); 331.7(c).

Once the RO completes his or her review, the Division Engineer makes a final decision on the merits of the RFA. § 331.7(a). "The Division Engineer will normally make a final decision on the merits within 90 days of the receipt of an acceptable RFA unless any site visit is delayed pursuant to § 331.7(c)." § 331.8. If the site visit is delayed, the Division Engineer will make a final decision within 30 days of the visit. *Id.* "In no such case will a site visit delay extend the total appeal process beyond twelve months from the date of receipt of an acceptable RFA."[1] *Id.*

---

[1] The Government misconstrues the timing requirement for an RFA decision, stating, "the Corps has until November 2023 to complete its … determination of Plaintiffs' appeal."

Upon the completion of the administrative appeal process, the Division Engineer will either issue a letter confirming the initial permit denial, or the Division Engineer will remand the matter to the District Engineer to issue a revised permit decision consistent with the Division Engineer's decision. §§ 331.10(a); 331.10(b). Accordingly, the Corps' final decision on the permit is either the Division Engineer's letter affirming the permit denial, or the District Engineer's "decision made pursuant to the division engineer's remand of the appealed action." *Id.* Only when a final Corps decision has been made may the affected party file legal action in federal court based on a permit denial. § 331.12 (emphasis added).

## II. Factual Background and Procedural History

Plaintiffs allege that in 2017 they found what may be "the largest gold discovery ever made on Alaska's Seward Peninsula."[2] [Doc. 11-1, p. 15]. As part of their planned gold mining operation, Plaintiffs applied for a permit to dredge the Bonanza Channel near Nome, Alaska on March 16, 2018, pursuant to § 404 of the CWA. [Doc. 1, p. 1]; [Doc. 11-1, p. 11]. After years of delay – and then only after Plaintiffs had filed a prior lawsuit in this Court (Case No. 22-CV-1353) – the Corps

---

[Doc. 11-1, p.15]. This is inaccurate and the Corps' apparent misunderstanding of its own regulations is concerning.

A plain reading of the applicable regulation requires a decision "as soon as practicable" and generally within 90 days of receiving an acceptable RFA. § 331.8. If, however, the RO determines a site visit is necessary and must be delayed due to extraordinary circumstances, "a final appeal decision will be made within 30 days of the site visit." *Id.* Given the dates on which the parties have scheduled the site visit (July 18-20, 2023), the Corps' deadline to make a final appeal decision is August 19, 2023.

[2] Plaintiff IPOP, LLC, is a Nevada-based company that was hired by Rivers of Gold, a California-based partnership with "many investors," including Plaintiffs Edward and Elaine Abell who are residents of Lafayette Louisiana. [Doc. 1, p. 2]; [Doc. 1-1, p. 2].

issued a decision denying Plaintiffs' permit application on September 8, 2022.[3] [Doc. 11-1, p. 12]. On November 3, 2022, Plaintiffs filed an RFA, which the Corps accepted on November 28, 2022.[4] [Doc. 11-1, p. 12]; [Doc. 1, p. 4].

Eight days later, on December 6, 2022, the Corps' RO informed Plaintiffs that "[d]ue to the size of the … file for the subject action," he had granted an extension to the Alaska District to provide the administrative record until January 10, 2023. [Doc. 11-2, p. 6]. On January 10, 2023, the RO notified Plaintiffs that he granted the Alaska District another extension, giving them until January 20, 2023, to produce the administrative record. [Doc. 11-2, p. 5]. Plaintiffs confirmed they had received the administrative record on January 23, 2023. [Doc. 11-2, p. 5]. That same day – after the RO declared a site visit would be necessary and asked for Plaintiffs' availability between June 20, 2023, and August 11, 2023 – Plaintiffs filed suit asking the Court

---

[3] The allegations made by the Plaintiffs regarding the series of events preceding their initial permit denial are troubling. To the extent warranted, undersigned reminds the Corps in general, and more specifically the District and Division Engineers overseeing this permitting process, that their positions – like my own – are ones of public trust. We work for the American people. The officers and employees of the Corps have a duty, mandated by Congress and funded by the taxpayers, to administer this important part of the Clean Water Act. Regardless of what the Corps ultimately decides with respect to issuing the requested permits, both the Plaintiffs and the public at large have the right to expect <u>timely</u> decisions by the Corps. By unnecessarily delaying any decision, the Corps is, in a very real way, abrogating its duty to administer this part of the Clean Water Act and failing in the execution of its important mission. And although the Corps has some discretion in how it accomplishes its mission, the factors that it may consider in issuing permits are limited to those authorized by law. The officers and employees of the Corps must perform their duty in accordance with law and without fear or favor.

[4] On May 20, 2022, Plaintiffs filed suit in this Court seeking to force the Corps to make a decision regarding their permit application. [Doc. 1-1, p. 1]. That case was ultimately dismissed by joint stipulation on September 13, 2022, after the Corps issued its decision on September 8, 2022. [Case No. 6:22-cv-1353, Doc. 18].

to either: (i) "excuse" Plaintiffs from the Corps' appeal process; or (ii) address the allegedly "unreasonable" delay in their appeal. [Doc. 15, p. 6].

On March 23, 2023, before the Corps filed an Answer, Plaintiffs filed a Motion for Partial Summary Judgment seeking dismissal from the Corps' administrative appeal process or action "requiring the Corps to take the lawfully-required steps to complete [the] appeal in a reasonable amount of time." [Doc. 5-1, p. 10]. The Corps filed the instant Motion to Dismiss on March 28, 2023. [Doc. 11].

In their Motion, the Corps alleges that this Court lacks jurisdiction under the Administrative Procedure Act ("APA") to hear Plaintiffs' claims until a final agency action has been issued. In the event the Court finds it has jurisdiction over Plaintiffs' claims, the Corps urges that this district is not the proper venue to consider these claims.[5] [Doc. 11-1, pp. 7-8]. In response, Plaintiffs assert that the Court has jurisdiction because the exhaustion of administrative remedies is not a prerequisite to federal courts exercising jurisdiction over administrative action, and further argue that venue is proper in the Court. [Doc. 15, pp. 6-7].

---

[5] Specifically, the Defendant requests that the Court transfer this action to the District of Alaska pursuant to 28 U.S.C. § 1404(a). In finding the Court lacks subject matter jurisdiction over Plaintiffs' claims, the Court need not decide Defendant's Motion to Transfer. However, without deciding the issue and based on the record currently before the Court, the Court deems it appropriate to note that if Plaintiffs choose to again seek judicial review once the Corps has taken final agency action, they should consider the most appropriate venue for that action given the factors set forth by the Fifth Circuit in *In re Volkswagen AG.* 371 F.3d 201, 203 (5th Cir. 2004) (per curiam). Here, the proposed dredging location is in Alaska, the permit application and appeal are being reviewed in Alaska, and there is apparently substantial local interest in Alaska. Further Plaintiff IPOP, LLC is a Nevada limited liability company, while the Abells are merely two of "numerous investors." However, the Court is without jurisdiction to decide this issue and will only address its merits if and when it is ripe for adjudication.

LAW AND ANALYSIS

### III. Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move for dismissal of a plaintiff's claims for lack of subject matter jurisdiction. It is fundamental that "[f]ederal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). As such, federal courts possess "only that power authorized by Constitution and statute." *Id.* The court may dismiss a case for lack of subject matter jurisdiction based on: (i) "the complaint alone," (ii) "the complaint supplemented by undisputed facts," or (iii) "the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Flores v. Pompeo*, 936 F.3d 273, 276 (5th Cir. 2019) (quoting *Robinson v. TCI/US W. Commc'ns Inc.*, 177 F.3d 900, 904 (5th Cir. 1997)). As the party invoking jurisdiction, plaintiff bears the burden of establishing subject matter jurisdiction. *Choice Inc. of Texas v. Greenstein*, 691 F.3d 710, 714 (5th Cir. 2012).

### IV. Administrative Procedure Act

#### A. Exhaustion of Administrative Remedies is Jurisdictional

Defendant moves to dismiss Plaintiffs' claims on the grounds that the Court lacks subject matter jurisdiction under the APA. [Doc. 11-1, p. 14]. The APA authorizes judicial review of final agency action when an administrative agency's statutory provisions do not directly provide for judicial review. 5 U.S.C. § 704. However, the APA "explicitly requires exhaustion of all intra-agency appeals mandated either by statute or by agency rule" before judicial review is available.

*Darby v. Cisneros*, 509 U.S. 137, 147 (1993). As such, the only agency actions subject to judicial review under the APA are those "made reviewable by statute and *final agency action* for which there is no other adequate remedy in a court." 5 U.S.C. § 704 (emphasis added). Agency action is "final" if two conditions are met: "First, the action must mark the consummation of the agency's decisionmaking process – it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177 (1997) (internal quotations and citations omitted). Though the APA does not state that the exhaustion requirement is jurisdictional, "[Fifth Circuit] precedent treats the APA's judicial review provisions as [a limit] on subject matter jurisdiction." *Amin v. Mayorkas*, 24 F. 4th 383, 389 (5th Cir. 2022) (citing *People's Nat'l Bank v. Off. Of Comptroller of Currency*, 362 F.3d 333, 336 (5th Cir. 2004)).

Here, the applicable Corps' regulation states that, "[n]o affected party may file a legal action in the Federal courts based on a permit denial or a proffered permit until after a final Corps decision has been made and the appellant has exhausted all administrative remedies under this part." § 331.12. Administrative remedies are considered exhausted when a "final Corps permit decision has been made in accordance with § 331.10." § 331.12. Pursuant to § 331.10, "[t]he final Corps decision on a permit application is the initial decision to issue or deny a permit, *unless* the applicant submits an RFA, and the division engineer accepts the RFA." § 331.10 (emphasis added).

In 1999, the Corps attempted to revise its regulations to mandate an administrative appeal before applicants can seek judicial review. *See* Administrative Appeal Process, 64 Fed. Reg. 11708 (March 9, 1999) ("the Corps is including Section 331.12 in this rule to make it explicit that persons dissatisfied with permit decisions must avail themselves of the administrative appeal process established in this rule, and have received a final Corps decision on the merits of the appeal, prior to seeking redress in the Federal courts").

While this may have been the Corps' intent, it is not what the regulations actually say. Section 331.12 provides that, "[t]he appellant is considered to have exhausted all administrative remedies when a final Corps permit decision is made in accordance with § 331.10." Section 331.10 states that "the *final* Corps decision on a permit application is the *initial decision* to issue or deny a permit, *unless* the applicant submits an RFA, and the division engineer accepts the RFA, pursuant to this Part." Final agency action for purposes of the APA is therefore the initial permit decision unless an RFA is timely filed and accepted.

Plaintiffs argue that because the regulation does not *require* parties to file an administrative appeal, exhaustion is not jurisdictional. [Doc. 15, p. 5]. In support of their argument, Plaintiffs rely on *Amin v. Mayorkas*, a case in which the Fifth Circuit held a plaintiff could challenge an agency's initial decision in federal court because the regulation – which stated that the initial agency decision "shall be appealable" – did not clearly mandate exhaustion. 24 F. 4th 383, 390 (5th 2022). In *Amin*, the plaintiff immediately challenged an agency's initial denial of his visa application in

federal court. *Id.* at 388. After the plaintiff filed his lawsuit, the agency conducted another review of his application, which was ultimately denied. *Id.* Then, the plaintiff amended his federal complaint, "and the litigation continued." *Id.* at 389. There, the question before the Fifth Circuit was "whether [the plaintiff's] claim [was] unreviewable because he *failed to appeal* the visa denial to [the agency] before filing suit." *Id.* The Fifth Circuit, after: (i) considering the context of the agency regulation stating that the denial of a visa "shall be appealable," and (ii) comparing it to other immigration laws "that unambiguously require exhaustion before judicial review," determined that the relevant regulatory language "is [ ] best read as permitting but not requiring applicants to seek further agency review before undergoing the delay and expense of federal trial." *Id.* at 390. Thus, the Fifth Circuit held that the regulation at issue did not "clearly" require an administrative appeal and that the court had "jurisdiction despite [the plaintiff's] failure to exhaust administrative remedies." *Id.*

Here, Plaintiffs' reliance on *Amin* is misguided. The Corps' regulation is clear that "no affected party may file a legal action in federal courts based on a permit denial *until after a final Corps decision has been made.*" § 331.12 (emphasis added). Pursuant to the regulation, a "final Corps decision on a permit application is the initial decision to issue or deny a permit, *unless the applicant submits an RFA.* 33 C.F.R. § 331.10 (emphasis added). Thus, like the plaintiff in *Amin*, Plaintiffs could have immediately challenged their initial permit denial in federal court. However,

because the Plaintiffs *did* file an administrative appeal, *i.e.*, the RFA, which was accepted, there is not yet a final decision by the Corps.

The Court need go no further to determine that there is not a final agency action to review. Because the Corps has yet to rule on Plaintiffs' appeal, there is no decision "mark[ing] the consummation of the agency's decisionmaking process," pursuant to the Corps' regulations, or determining "rights or obligations [from which] legal consequences will flow." *Bennett*, 520 U.S. at 177 (1997). The Court therefore lacks jurisdiction to hear Plaintiffs' claims.

### B. Plaintiffs Have Not Shown Sufficient Facts to Excuse Exhaustion

While exhaustion is jurisdictional, Plaintiffs allege, in the alternative, that they should be excused from exhausting the Corps' administrative remedies because "[t]he Corps' [alleged] misconduct makes further review futile," and Plaintiffs are not required to suffer "undue administrative delay." [Doc. 15, pp. 10-11]. Plaintiffs rely on *McCarthy v. Madigan* to advance their argument. 503 U.S. 140 (1992). There, the Supreme Court stated that while exhaustion is generally required before seeking relief in federal courts, the Court has generally recognized "three broad sets of circumstances in which the interest of the individual weigh heavily against requiring administrative exhaustion."[6] *Id.* at 146. The three broad circumstances are: (i) "undue prejudice … [such as] an unreasonable or indefinite timeframe for

---

[6] Notwithstanding these exceptions, "[w]here Congress specifically mandates, exhaustion is required." *Id.* at 144 (*citing Coit Independence Joint Venture v. FSLIC*, 489 U.S. 561, 579 (1989)). If not explicitly required by Congress, "sound judicial discretion governs." *Id.*

administrative action," (ii) "doubt as to whether the agency [is] empowered to grant effective relief," and (iii) "where the administrative body is shown to be biased or has otherwise predetermined the issue before it." *Id.* at 146-48 (citations omitted). When determining whether exhaustion is required, "federal courts must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion." *Id.* at 146. Exhaustion will be particularly favored "when the action under review involves exercise of the agency's discretionary power or when the agency proceedings in question allow the agency to apply its special expertise," and when "a judicial controversy may well be mooted." *Id.* (citations omitted).

Here, the balancing interests clearly favor exhaustion. First, Plaintiffs are not subject to any "unreasonable or indefinite timeframe." Plaintiffs complain that they are forced to suffer "undue delay" because of the site visit requested by the RO.[7] Where, as here, winter weather makes a site visit "impracticable" for almost half of the year, the Corps' regulation provides that the RO "may extend the time period for review." § 331.7(c). Though the site visit has delayed the decision on Plaintiffs' administrative appeal, the Corps' regulation explicitly states that "[i]n no case will a site visit delay extend the total appeal process beyond twelve months from the date

---

[7]   Plaintiffs also seek to be excused from exhaustion based on alleged delays by the Corps in its initial permit denial and the fact that the Corps "may well later argue … that there is no firm deadline whatsoever." [Doc. 15, p. 14]. However, neither of these issues are relevant to the Court's present inquiry. Essentially, Plaintiffs are attempting to argue the merits of their case here, but these issues are only ripe for judicial review once a final agency action has been made *or* the Corps has gone beyond the time limitations outlined in § 331.8. (discussed *supra,* pp. 3-4).

of receipt of an acceptable RFA." *Id.* Plaintiffs cannot claim to suffer an "indefinite" delay when the Corps' regulation itself places a maximum twelve-month limitation on the appeals process.[8] Moreover, because Plaintiffs' RFA was accepted on November 28, 2022, the Corps must issue a decision according to its own regulations, as soon as practicable and, in any event, not later than 30 days after the site visit or November 28, 2023, whichever is earlier. Because the regulations allow for reasonable delay to conduct a site visit, the mere fact that the Corps' decision was delayed beyond 90 days, without more, does not give the Court sufficient grounds to excuse the exhaustion requirement.[9]

Second, Plaintiffs have failed to produce sufficient evidence of bias or futility to excuse exhaustion. Plaintiffs allege that their appeal is futile due to the bias of both the District and Division Engineers. [Doc. 15, p. 11]. Specifically, Plaintiffs argue that the "extraordinary and biased conduct" of the District Engineer prompted Plaintiffs to seek assistance from the Division Engineer, who repeatedly ignored their efforts and therefore, "confirmed that [he] had no intention of correcting the problem" during their initial appeal, and that because of this, the "very nature of the Corps'

---

[8] Similarly, a delay of up to twelve months is not *per se* "unreasonable." *See McCarthy*, 503 U.S. 140, 147 (1992) (finding a possible *ten-year delay* makes exhaustion unnecessary) (citing *Walker v. Southern R. Co.*, 385, U.S. 196, 198 (1966) (emphasis added)).

[9] Plaintiffs also assert that the Court has jurisdiction over their unlawful delay claim pursuant to § 706(1) of the APA. [Doc. 15, p. 14]. However, Section 706 of the APA only applies to *reviewable* actions. *See* 5 U.S.C. §§ 704-706. Reviewable actions are only "agency action[s] made reviewable by statute and final agency action[s]." § 704. While the Court shares Plaintiffs' concerns regarding the Corps' seemingly excessive delay in making its initial permit decision, this claim is only reviewable once a final agency action has been made.

appeal process confirms futility."[10] [Doc. 15, pp. 12-13]. At bottom, the suggestion that the appeal is "predetermined" because the Division Engineer allegedly ignored Plaintiffs' communications regarding the District Engineer during their *initial* permit application and "failed to correct the problem," is conclusory and does not prove futility. *See, e.g., McCarthy v. Madigan*, 503 U.S. 140, 148 (1992) (finding where the Attorney General has already determined "that the challenged rules of the prison were validly and correctly applied to petitioner, requiring administrative review through a process culminating with the Attorney General would be to demand a futile act") (*citing Houghton v. Shafer*, 392 U.S. 639, 640 (1968) (quotations omitted)).

Moreover, Plaintiffs' selective reading of the Corps' appeal process does not "confirm futility." Pursuant to the Corps' regulations, "[t]he division engineer has the authority and responsibility for administering a fair, reasonable, prompt, and effective administrative appeal process." § 331.3(a). Additionally, the RO who assists the Division Engineer with the appeals process, "will not perform, or have been involved with, the preparation, review or decision making of the action being appealed. The RO will be independent and impartial in reviewing any appeal." § 331.3(b). Rather than demonstrating that the appeals process is "predetermined,"

---

[10] Additionally, Plaintiffs argue that their initial permit was denied due to the District Engineer's bias. The District Engineer's alleged bias, however, is irrelevant at this stage of the Court's inquiry into futility because the District Engineer has no role in the appeals review process. 33 C.F.R. § 331.7. ("The appeal process will normally be conducted by the RO … The division engineer *may* participate in the appeal process as the division engineer deems appropriate. The division engineer will make the appeal decision on the merits of the appeal, and provide any instruction, as appropriate, to the district engineer.").

the Corps' regulation takes measures to ensure that appeals are impartial.[11] Thus, Plaintiffs have failed to make a showing that the Corps' appeal process is futile.

All told, Plaintiffs' concerns of delay, bias, and futility, do not outweigh the Corps' institutional interest in requiring exhaustion. Because the Corps' appeal process serves to allow it to exercise the discretionary power delegated to it by Congress in the CWA, the issue on appeal directly relates to the Corps' expertise. And a decision by the Corps to grant the requested permit may moot Plaintiffs' claims. Despite the apparent inefficiency and poor communication exhibited by the Alaska District of the Corps in considering and denying the permit in the first instance, Plaintiffs have failed to show how they will suffer "irreparable harm" if required to wait the relatively insignificant amount of time for the Corps to make its decision on the RFA. Nor have they demonstrated any "extraordinary circumstances" that would excuse exhaustion. *See, e.g., McCarthy v. Madigan*, 503 U.S. 140, 149-50 (1992) (holding that it would be futile to require a federal prisoner seeking money damages to exhaust administrative remedies because the agency had no authority to award money damages); *U.S. v. Gutierrez*, 443 F. App'x 898, 904 (5th Cir. 2011) (finding futility when "the inadequacy of the institutions themselves rendered exhaustion futile."); *Dawson Farms, LLC v. Farm Service Agency*, 504 F.3d 592, 606 (5th Cir.

---

[11] Plaintiffs further allege that the administrative appeal is "little more than an injurious waste of time" because the regulations state that "[t]he division engineer will not attempt to substitute his judgment for that of the district engineer regarding a matter of fact, so long as the district engineer's determination was supported by substantial evidence in the administrative record ..." 33 C.F.R. Sec. 331.9(b). If, however, Plaintiffs are correct in that their initial permit was denied due to bias, then the Division Engineer *can* substitute his judgement for that of the District Engineer. This is further indication that the Corps' appeal process is *not* futile or predetermined.

2007) ("[O]vercoming the jurisprudential requirement for administrative exhaustion is difficult," and the exceptions apply only in "extraordinary circumstances."). Accordingly, there are insufficient grounds for the Court to excuse Plaintiffs from the Corps' administrative appeal process and the Court therefore lacks subject matter jurisdiction over their claims.

## CONCLUSION

Because the Plaintiffs have yet to exhaust their administrative remedies, the Court is without jurisdiction to decide the merits of Plaintiffs' claims.

IT IS HEREBY ORDERED that Defendant's MOTION TO DISMISS [Doc. 11] is GRANTED.

IT IS FURTHER ORDERED that this matter is DISMISSED without prejudice for lack of subject matter jurisdiction.

IT IS FURTHER ORDERED that Plaintiffs' MOTION FOR SUMMARY JUDGMENT ON THEIR SECOND CLAIM FOR RELIEF [Doc. 5] is DENIED AS MOOT.

THUS, DONE AND SIGNED in Chambers on this 19th day of May 2023.

_____
DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE